UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAVEN RAMOS, JEFFREY MCNEILL, and TYLER O'NEAL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Civil Action No. 7:22-cv-02761-NSR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons employed by Defendant in New York State as "Experts," "Geniuses," "Genius Admins," "Lead Geniuses," "Inventory Specialists," "Operations Experts," "Operations Specialists," "Operations Leads," "Cash Leads," "Pros," "Specialists," "Technical Experts," and "Technical Specialists" from six years preceding this Complaint to the date of class notice in this action (the "Class").

2. New York Law requires companies to pay their manual workers on a weekly basis unless they receive an express authorization to pay on a semi-monthly basis from the New York State Department of Labor Commissioner. *See* New York Labor Law ("NYLL"), Article 6, § 191.

3. Defendant has received no such authorization from the New York State Department of Labor Commissioner.

4. The New York Court Of Appeals has explained that this law is "intended for the protection of those who are dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (citing former Labor Law § 196).

5.Defendant has violated and continue to violate this law by paying its manual workers every other week rather than on a weekly basis.

6.All persons employed by Defendant in the aforementioned positions are manual workers who spend more than 25% of their working time engaged in physical labor.

**Overview of Job Positions in Apple Stores**

7.While some of Apple employees do not qualify as manual workers under NYLL § 191, several categories of employees do fall within this category.  Notably, there is considerable overlap in the duties of several different job titles, and some job titles are used interchangeably by Apple.  Examples of the class members Plaintiffs seek to represent are described below.

8.**Specialists, Technical Specialists, Experts, and Pros.**  Defendant employs Specialists, Technical Specialists, Experts, and Pros in its Apple Stores.  Employees working in these positions advise customers on their purchase decisions and on device setup and troubleshooting.  These employees lift and physically manipulate Apple products throughout the day while performing their job responsibilities.  All of these individuals spend much of the day on their feet, as they frequently stand on and traverse the sales floor for hours while advising customers.

9.Specialists, Technical Specialists, Experts, and Pros carry Apple products, in bulk, through their respective Apple Stores.  While doing so, they often stand for hours on end and walk thousands and thousands of steps per day. Photographs of these employees while at work are depicted below:







10.     In addition to performing the above tasks, Specialists help maintain visual merchandising.  Specialists are thus responsible for moving heavy boxes containing Apple devices to specified locations on the sales floor and ensure that signage and other materials are properly placed.  Specialists regularly assist other team members, moving items around and out of the back-of-house area, stocking shelves, organizing supplies, bringing products to customers, and performing other auxiliary physical tasks.

11.     In addition to completing the above tasks, Technical Specialists also help to repair and replace devices' failing components.  This requires manual, hands-on work.

12.     **Cash Leads.**  As a Cash Lead, 25% or more of an employee's time is spent picking up tills, which weigh up to 30 pounds each, putting them on a cart, and pushing up to 10 cash tills at a time from one location within the store to another.  Cash Leads also assist salespersons as needed.

13.     **Technical Experts, Geniuses, Genius Admin, and Lead Geniuses.**  Defendant also employs individuals as Technical Experts, Geniuses, and Genius Admin.  These employees

4

primarily focus on device repair.  Technical Experts, Geniuses, and Genius Admin carry customers' Apple products to and from the sales floor and back-of-house areas.  Technical Experts, Geniuses, and Genius Admin unscrew devices' cables, connectors, and other miniature electronic components.  They also utilize heat guns, spudgers, and additional hand-held mechanical tools to manually loosen, scrape off, and cleanse away devices' adhesive materials.  They also probe, mechanically test, and diagnose devices' electronic components and malfunctions, all of which require physical, hand-on work.  In addition, they repair and replace devices' failing components and reassemble devices.  Technical Experts, Geniuses, and Genius Admin spend much of the day on their feet, as they frequently traverse the back-of-house and sales floor areas for hours at a time.

14. Technical Experts, Geniuses, and Genius Admin spend much of their time taking apart, fixing, and sanitizing and/or cleaning Apple products.  Many of these products are filthy, necessitating cleaning debris from the products.  While working on these products, they wield a multitude of tools, reposition delicate electronics, and move around cumbersome devices.  An example of such is depicted below:



15. Lead Geniuses have largely the same responsibilities as Geniuses and/or Genius Admin except they are also oversee Geniuses to make sure job tasks are completed.

16. **Operations Specialists.** Defendant also employs Operations Specialists in its Apple Stores. Operations Specialists carry merchandise, parts, tools, supplies, and other materials between the back-of-house and sales floor areas. In addition to walking considerable lengths each day while carrying heavy boxes containing Apple products, Operations Specialists manually manipulate inventory and parcels to organize, scan, and count them and their contents.

17. Operations Specialists also carry Apple products and other supplies through store areas. They lift these materials onto and maneuver them around shelving. By way of example, the individuals on the left-hand side of each of the following photographs are performing some of the functions of this role:





18.     **Inventory Specialists, Operations Experts, and Operations Leads.**  Defendant also employs Inventory Specialists and Operations Experts in its Apple Stores.  Inventory Specialists and Operations Experts unload their respective stores' daily deluge of pallets, packed full of merchandise, parts, tools, supplies, and other cargo, from freightliner trucks and semi-trucks.  In doing so, Inventory Specialists and Operations Experts lift thousands of pounds and climb the equivalent of dozens of flights of stairs each day.  They move cargo trucks' unwieldy payloads from semi-trailers, into Apple Stores' stockrooms, and onto shelving.  Inventory Specialists and Operations Experts open and dispense with cumbersome parcels to work their way through highly rigid packaging materials, while safely extracting their enclosed, often fragile, contents.

19.     Inventory Specialists and Operations Experts are also responsible for moving heavy boxes filled with Apple products and other supplies through vast areas of their respective Apple Stores.  While doing so, they push carts, lift parcels by hand, and open shipments. They also move objects on and off shelving.  Examples of such are depicted below:

7









20.     Operations Leads have largely the same responsibilities as Operations Specialists and/or Experts except they are also oversee Operations Specialists and/or Experts to make sure job tasks are completed.

21.     Apple Store teams also have Business Experts, Business Specialists, Creatives, Creative Leads, Creative Pros, Managers, and Senior Managers. These employees primarily

undertake functions that are intellectual and managerial in nature, and they are not included in the putative Class definition.

22. Plaintiffs therefore demand liquidated damages, interest, and attorneys' fees on behalf of themselves and the putative Class.

## JURISDICTION AND VENUE

23. This Court has personal jurisdiction over Defendant because Defendant conducts business in New York. Defendant owns and operates numerous Apple Store locations within New York.

24. This Court has subject matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

25. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

26. Defendant Apple Inc. is a California corporation with a principal place of business in Cupertino, California. Defendant owns and operates Apple Store locations that employ hundreds, if not thousands, of manual workers in the State of New York.

27. Plaintiff Raven Ramos is a citizen of New York who resides in Port Chester, New

York. Plaintiff was employed by Defendant as a Cash Lead and Operations Specialist from approximately October 2010 to January 2018 at an Apple Store located at 767 5th Ave., New York, New York. At least 25% of Plaintiff's job responsibilities at Apple as an Operations Specialist included manual labor, including tasks such as unboxing and unloading pallets of products, assisting customers, and running boxes of products from the back of house to the sales floor. At least 25% of Plaintiff's job responsibilities at Apple as a Cash Lead included manual labor, including tasks such as picking up heavy tills containing money, putting tills on a cart, and pushing the cart containing up to 10 tills at a time from one location within the store to another. Plaintiff was paid every other week, rather than weekly, during the entirety of her employment with Defendant. Plaintiff has been injured by Defendant's failure to pay timely wages because she was temporarily deprived of money owed to her. Thus, every day that said money was not paid to her in a timely fashion, she lost the time value of that money.

28. Plaintiff Jeffrey McNeill is a citizen of New York who resides in Queens Village, New York. Plaintiff was employed by Defendant as an Inventory Specialist from approximately 2012 to 2018 at an Apple Store located in New York, New York. At least 25% of Plaintiff's job responsibilities at Apple included manual labor. As an Inventory Specialist, Plaintiff performed tasks such as unloading pallets of merchandise, parts, tools, supplies, and other materials from cargo trucks, carrying boxes from pallets into throughout the back-of-house stockroom, opening boxes and unloading their enclosed goods, carrying goods across store areas and lifting them onto shelves, organizing back-of-house inventory, and frequently traversing the Apple Store in which he worked. Plaintiff was on his feet for almost the entirety of his employment at Defendant's store, largely performing the above-listed tasks. Plaintiff was paid every other week, rather than weekly, during the entirety of his employment with Defendant. Thus, for half of each biweekly

pay period, Plaintiff was injured in that he was temporarily deprived of money owed to him, and he could not invest, earn interest on, or otherwise use these monies that were rightfully his. Accordingly, every day that said money was not paid to him in a timely fashion, he lost the time value of that money.

29. Plaintiff Tyler O'Neal is a citizen of New York who resides in Victor, New York. Plaintiff was employed by Defendant as a Technical Specialist from approximately 2015 to 2017 and as a Genius from approximately November 2018 to January 2020 at an Apple Store located in Victor, New York. At least 25% of Plaintiff's job responsibilities at Apple from 2015 to 2020 included manual labor. Specifically, Plaintiff regularly stood for hours on end while advising customers, and Plaintiff lifted and carried heavy boxes of Apple products throughout the day. Plaintiff helped to maintain visual merchandising, which required moving heavy, fragile devices back into their respective locations on the sales floor and ensuring that signage and other materials were properly placed. Plaintiff walked, in the aggregate, thousands upon thousands of steps each day, greeting customers, guiding customers across the sales floor to view and discuss products, and approaching customers that were in need of assistance. As a Genius, Plaintiff performed physical tasks such as carrying customers' Apple products back and forth between the sales floor and back-of-house Genius Room. Plaintiff probed, mechanically tested, and diagnosed devices' electronic components and malfunctions. Plaintiff repaired and replaced devices' failing components, and he disassembled and reassembled devices. As a Genius, Plaintiff spent many of his working hours on his feet. Plaintiff stood to check in and serve customers, and he frequently traversed the sales floor. Plaintiff was paid every other week, rather than weekly, during the entirety of his employment with Defendant. Thus, for half of each biweekly pay period, Plaintiff was injured in that he was temporarily deprived of money owed to him, and he could not invest,

earn interest on, or otherwise use these monies that were rightfully his.  Accordingly, every day that said money was not paid to him in a timely fashion, he lost the time value of that money.

## CLASS ACTION ALLEGATIONS

30. Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to represent a class defined as all non-managerial employees—including but not limited to, "Experts," "Geniuses," "Genius Admins," "Lead Geniuses," "Inventory Specialists," "Operations Experts," "Operations Specialists," "Operations Leads," "Cash Leads," "Pros," "Specialists," "Technical Experts," and "Technical Specialists"—employed by Defendant in New York State from six years preceding this Complaint to the date of class notice in this action (the "Class").

31. Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the employment records of Defendant.

32. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:  whether Defendant was required to pay class members on a weekly basis, whether class members were paid on a weekly basis, and whether Defendant violated NYLL § 191.

33. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs performed 25% or more physical labor for Defendant during the class period but were not provided with compensation for their work on a weekly basis.

34. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained

competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

35. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## **CLAIMS FOR RELIEF**

## **COUNT I**

### **New York Labor Law – Failure to Pay Timely Wages**

36. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

37. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiffs and the Class.

38. Defendant failed to pay Plaintiffs and the Class on a timely basis as required by NYLL § 191(1)(a).

39.     Due to Defendant's violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendant the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class members;

b. For an order declaring Defendant's conduct violates the law referenced herein;

c. For an order finding in favor of Plaintiffs and the Class on the count asserted herein;

d. For liquidated damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded; and

f. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  July 7, 2022                                                Respectfully Submitted,

**BURSOR & FISHER, P.A**

*/s/ Yitzchak Kopel*

Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY  10019

>Telephone: (646) 837-7150
>Facsimile: (212) 989-9163
>Email:  ykopel@bursor.com
>            aleslie@bursor.com

>*Counsel for Plaintiffs*